# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 5, 2011 Session

## STATE OF TENNESSEE v. JOSEPH TIPLER

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 96-1426, 27, 28, 29, 30      Chris Craft, Judge**

---

**No. W2010-01246-CCA-R3-PC  - Filed November 10, 2011**

---

The state appeals from the post-conviction court's judgment granting the petitioner a new sentencing hearing.  A Shelby County jury convicted the petitioner on two counts of aggravated kidnapping, two counts of aggravated assault, one count of assault, and one count of aggravated burglary.  The trial court - Division One of the Shelby County Criminal Court - sentenced him as a Range II, multiple offender to an effective sentence of twenty years in the Tennessee Department of Correction, with a release eligibility of thirty-five percent on all counts.  The petitioner's habeas corpus petition alleged that a release eligibility of thirty-five percent was illegal for his aggravated kidnapping convictions.  The habeas court - Division Five of the Davidson County Criminal Court - agreed, and it vacated his sentences for aggravated kidnapping.  The habeas court remanded the case to Division One of the Shelby County Criminal Court - for a new sentencing hearing in accordance with Tennessee Code Annotated section 40-35-501.  On remand, the trial court corrected the judgment forms to reflect the 100% release eligibility required by statute for the aggravated kidnapping convictions but did not conduct a hearing.  The petitioner filed a petition for post-conviction relief alleging that the corrected judgments were void and that the entry of corrected judgments violated double jeopardy.  The post-conviction court - Division Eight of the Shelby County Criminal Court - granted relief, vacating the corrected judgments and remanding the case to Division One of the Shelby County Criminal Court for a new sentencing hearing.  The state appeals the post-conviction court's order, arguing that the only possible remedy for the petitioner was the entry of corrected judgments.  Following our review, we reverse the post-conviction court's order granting relief and dismiss the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. J.C. MCLIN, J., (Mortuus). [1]

Lance R. Chism, Memphis, Tennessee, for the appellee, Joseph Tipler.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

**Background**

In its decision disposing of the petitioner's direct appeal, another panel of this court set forth the following summary of the facts leading to the petitioner's convictions:

> In 1995, Frances Smith resided with her thirteen year old son, Shannon, in Collierville. At some time during the month of September, Ms. Smith permitted the appellant, the brother of Ms. Smith's ex-husband, and his girlfriend, Penny McIntyre,[FN 2] to stay at her residence.
>
> > [FN 2] Penny McIntyre was charged as a co-defendant in this case. Prior to the appellant's trial, McIntyre entered guilty pleas to the offenses of aggravated criminal trespass, assault, and attempted aggravated kidnapping.
>
> On October 8, 1995, an argument erupted between the appellant and Ms. Smith because the appellant believed that Ms. Smith had accused him of stealing Shannon's stereo. When Ms. Smith denied making the accusation, the appellant "hit [her] in the mouth and busted [her] lip."[FN 3] Ms. Smith retaliated by evicting the appellant and his girlfriend from her home, reclaiming her keys to the residence, and placing the appellant's personal belongings "out on the back porch."

---

[1]This case was originally assigned to our colleague and friend, Judge J.C. McLin. After Judge McLin's untimely death on September 3, 2011, the case was re-assigned. Prior to his death, Judge McLin and his staff had done extensive work on this case. We have utilized much of that work, incorporated it into this opinion, and take this opportunity to acknowledge the faithful service of Judge McLin to this Court.

[FN 3] This altercation led to the appellant's conviction, in the present case, for assault.

Two days later, at approximately 3:00 a.m., Ms. Smith was awakened by someone "beating on the back door." She woke her son and instructed him to go out the front door of the house. When Ms. Smith opened the front door, she was greeted by Penny McIntyre who physically detained Ms. Smith by grabbing her by the arm. Shannon, however, was able to escape and started running towards a neighbor's house. The appellant, who by this time had succeeded in breaking a board covering a broken glass pane on the back door and unlocking the door, ran through the house and inquired as to the whereabouts of Shannon. McIntyre informed the appellant that Shannon had gone next door. Armed with a "10 to 12" inch knife, the appellant "took off after [Shannon]." Before Shannon was able to reach the neighbor's front door, the appellant stopped him and told him to come back to the house. The appellant "grabbed [Shannon's] left arm and ... pulled [him] back" to the house.

Once in the house, the appellant began "cussing [Ms. Smith] and calling [her] names," while Ms. Smith and Shannon sat "on the bed." The appellant "pulled the left side of [Ms. Smith's] hair back and slapped [her] upside the head." He then "threatened to kill [her] with the knife, but ... gave the knife to Shannon," stating that "he better throw the knife away because if he didn't he would do something he would regret." Shannon threw the knife on the floor and McIntyre retrieved the weapon. The appellant informed Ms. Smith that "he come [sic] there to kill [her] just like his brother-in-law had killed his sister." Penny McIntyre inquired as to the location of a cassette tape, Ms. Smith responded and retrieved the cassette from "the counter." Before leaving the house, the appellant asked Ms. Smith whether she needed a ride to work the next day. The entire episode lasted approximately forty-five minutes. Subsequent to the appellant's departure, Ms. Smith remained in her bed for several hours before reporting the incident to law enforcement officials.

*State v. Joseph Tipler*, No. 02C01-9611-CR-00384, 1998 WL 32683, *1 (Tenn. Crim. App., at Jackson, Jan. 30, 1998), *perm. app. denied* (Tenn. Oct. 12, 1998).

On direct appeal, the petitioner argued that his separate convictions for aggravated kidnapping and aggravated assault violated due process because any movement of the

victims was incidental to the assault. *Id.* at \*2. This court disagreed with the petitioner and affirmed the judgments of the trial court. *Id.*

The petitioner filed a petition for post-conviction relief on November 16, 1998, alleging that he received ineffective assistance of counsel at trial. *Joseph Kenneth Tipler v. State*, No. W2000-00168-CCA-R3-PC, 2000 WL 1840079, \*1 (Tenn. Crim. App., at Jackson, Dec. 6, 2000), *perm. app. denied* (Tenn. May 14, 2001). The post-conviction court denied relief, and the petitioner appealed. *Id.* at \*2. This court affirmed the denial of post-conviction relief. *Id.* at \*3.

The petitioner filed a petition for writ of habeas corpus in 2008.[2] The habeas court entered an order on January 8, 2009, granting the petition for habeas corpus relief, vacating the petitioner's sentences for aggravated kidnapping, and transferring the case "to the Shelby County Criminal Court for a new sentencing hearing in accordance with [Tennessee Code Annotated section] 40-35-501."

There is nothing in the record indicating that Division One of the Shelby County Criminal Court[3] held a sentencing hearing. On January 15, 2009, Division One entered corrected judgments reflecting a 100% release eligibility for the two aggravated kidnapping sentences. According to the petitioner's post-conviction petition, the petitioner filed a motion to set aside the corrected judgments, which Division One denied.

The petitioner filed for post-conviction relief on November 9, 2009, and the matter was assigned to Division Eight of the Shelby County Criminal Court. Division Eight held a hearing on March 10, 2010.

At the hearing, the petitioner testified regarding the procedural history of the matter. The petitioner further testified about the habeas corpus proceeding in the Davidson County Criminal Court. According to the petitioner, the state argued in that proceeding that the errors on the judgment sheets for the aggravated kidnapping convictions were mere clerical errors, but the petitioner said that the habeas court "shut [the state] down and said no, it's beyond clerical." The petitioner stated, "I remember the Judge telling my attorney and the prosecutor to get together and get it worked out and then he would sign the Order." The petitioner recalled that "on March 5th[,] [his] sentences were wiped from the [Department

---

[2] The habeas petition is not in the appellate record nor is the transcript of the hearing before the habeas court.

[3] The record reflects that the original trial judge had retired prior to the petitioner's habeas proceeding.

of Correction's] computer," and the Department of Correction "put a retainer on [him] . . . for Shelby County to pick [him] up." The petitioner testified that "on March 6th[,] [he] was re-sentenced to twenty years at [100%]."

Division Eight granted the petition for post-conviction relief. In its written order granting relief, Division Eight made the following findings of fact:

> [The petitioner] filed a habeas corpus petition in Division Five of Davidson County Criminal Court, when he discovered the Tennessee Department of Correction was computing his 20 year Aggravated Kidnapping sentences as 100 [%] Violent Offender sentences, despite the percentage stated on the face of the judgments. On January 8, 2009, Judge Monte Watkins entered an order vacating the two 35% Aggravated Kidnapping sentences as illegal, transferring the cause to "the Shelby County Criminal Court for a new sentencing hearing in accordance with T.C.A. § 40-35-501." This appears to be a consent order which the State never appealed.

> As far as this court can tell from the absence of a record of a new sentencing hearing no new sentencing hearing was ever conducted, but new judgments were nevertheless entered January 15, 2009, by the judge in Division One changing the notation of "Multiple Offender 35%" to "Violent Offender 100%." The defendant filed a motion to set aside these two judgments, which was denied by Division One on March 24, 2009, causing the petitioner to file the instant petition for post-conviction relief on November 9, 2009.

Division Eight concluded that a new sentencing hearing was required because the habeas court's order vacated the petitioner's sentences entirely rather than merely finding the sentences illegal. The state now appeals Division Eight's granting of post-conviction relief.

**Analysis**

On appeal, the state argues that the post-conviction court erred by concluding that Division One should have held a new sentencing hearing rather than enter a corrected judgment. The state claims that no authority exists for the post-conviction court's ruling because the proper remedy for an illegal sentence in such a case as this is entry of a corrected judgment. The petitioner responds that some authority exists for granting a new sentencing hearing and argues that it was improper for Division One to alter the habeas court's order granting a new sentencing hearing.

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

The Tennessee Supreme Court recently addressed an issue very similar to this case in *Cantrell v. Easterling*, 346 S.W.3d 445, 448 (Tenn. 2011). In *Cantrell*, the defendant stood convicted of four counts of aggravated rape, and the judgment sheets indicated that the defendant was a Range II, multiple offender with a release eligibility of 35%. *Id.* However, Tennessee Code Annotated section 39-13-523, provides that a defendant with multiple convictions for aggravated rape must be classified as a Multiple Rapist and be required to serve the entirety of the imposed sentence. *Id.* at 457. The supreme court ruled that Cantrell's judgment sheets set forth sentences directly contravened by statute, and, therefore, the sentences were illegal and void. *Id.* The supreme court also ruled that "[t]he only remedy to which Defendant is entitled as a result of his habeas corpus proceeding is the entry of amended judgment orders on each of his four aggravated rape convictions reflecting Defendant's status as a multiple rapist." *Id.*

In this case, a jury convicted the petitioner of two counts of aggravated kidnapping, and the trial court entered judgment sheets indicating that the petitioner was a Multiple Offender with a release eligibility of 35%. However, Tennessee Code Annotated 40-35-501(i) provides that aggravated kidnapping is an offense for which there is no release eligibility. Therefore, the judgment sheets set forth sentences that were in direct contravention of Tennessee Code Annotated section 40-35-501(i), a "fatal error" under *Cantrell*. *See Cantrell*, 346 S.W.3d at 452. As such, the petitioner's sentences for aggravated kidnapping were illegal and void, which was the conclusion reached by the habeas corpus court. The complication in this case arises from the habeas corpus court's order requiring a new sentencing hearing in accordance with Tennessee Code Annotated section 40-35-501. Division One apparently interpreted the habeas corpus court's order as requiring the entry of amended judgment sheets reflecting the correct release eligibility. In light of the *Cantrell* court's ruling that the only available remedy in a habeas corpus proceeding when the judgment forms reflect an illegal release eligibility is the entry of corrected judgment forms, we conclude that Division One's interpretation of the habeas corpus court's order was logical. Because the only remedy available is the entry of corrected

judgment forms, the only result possible from "a new sentencing hearing in accordance with [Tennessee Code Annotated section] 40-35-501" was the entry of corrected judgment forms reflecting the statutorily mandated 100% release eligibility. Therefore, the post-conviction court erred by granting the petitioner's petition for post-conviction relief from Division One's amended judgments, and we reverse the post-conviction court's judgment and dismiss the post-conviction petition.

## Conclusion

Based on the foregoing reasons, we reverse the post-conviction court's granting of relief and dismiss the petitioner's post-conviction petition.

_____
CAMILLE R. McMULLEN, JUDGE